UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


CHAZ O. GULLEY,                          :
            Plaintiff,                   :
                                         :
      v.                                 :          NO. 3:18-cv-941 (SRU)
                                         :
LIMMER, et al.,                          :
            Defendants.                  :


**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Chaz O. Gulley, commenced the instant civil rights action, asserting a

federal claim for use of excessive force and a supplemental state law claim for assault and

battery.  Initial Review Order, Doc. No. 7-2 at 3.  The named defendants, Lieutenant Limmer and

Correctional Officer Sullivan, have moved for summary judgment.  Mot. for Summ. J., Doc. No.

28.  For the following reasons, the defendants' motion is **granted**.

I.      Standard of Review

A motion for summary judgment may be granted only where there is no genuine dispute

regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113–14

(2d Cir. 2017).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.'"  *Nick's Garage*, 875 F.3d at 113–14

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Which facts are material is

determined by the substantive law.  *Anderson*, 477 U.S. at 248.  "The same standard applies

whether summary judgment is granted on the merits or on an affirmative defense . . . ."

*Giordano v. Market Am., Inc*., 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets that burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He or she cannot "rely on conclusory allegations or unsubstantiated speculation" but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). To defeat a motion for summary judgment, the nonmoving party must present evidence that would allow a jury to find in his or her favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000) (internal citation omitted).

A court may rely on video surveillance evidence when considering a motion for summary judgment. *See Scott v. Harris*, 550 U.S. 372, 378–80 (2007) (crediting a videotape that captured the events in question and contradicted the non-moving party's story, and noting that a court need not adopt a non-moving party's version of events where that version "is blatantly contradicted by the record, so that no reasonable jury could believe it"). Moreover, although the court is required to read a self-represented party's "papers liberally 'to raise the strongest arguments that they suggest,'" *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

2

II.     Facts[1]

In March 2018, Gulley was confined at MacDougall-Walker Correctional Institution

("MacDougall").  Doc. No. 28-2, at ¶ 1.  On March 17, 2018, Gulley was issued a disciplinary

report for attempting to assault staff and taken to the restrictive housing unit ("RHU").  *Id.*

While in RHU, Gulley attempted to hang himself by tying a bedsheet around his neck and

attaching it to a light fixture in the cell.  *Id.*, at ¶ 2.  Correctional staff thereafter brought Gulley

to the University of Connecticut Health Center.  *Id.*, at ¶ 3.

Gulley returned to MacDougall about 9:00 p.m. the same day.  *Id.*, at ¶ 4.  Lieutenant

Diaz told Limmer that Gulley said that he was going to "turn it up," a statement that Gulley

denied making.  *Id.*, at ¶ 5; Doc. No. 31, at 2.  Limmer understood that statement to mean that

Gulley intended to be disruptive and noncompliant.  Doc. No. 28-2, at ¶ 5.

Gulley was taken to room six in the MacDougall infirmary, to be placed on mental health

observation status.  *Id.*, at ¶ 6.  Upon arriving at the infirmary, Limmer ordered that a "controlled

strip search" be performed on Gulley.  *Id.*, at ¶ 7.  A "controlled strip search" is a strip search

---

[1] The facts are taken from the defendants' Local Rule 56(a)1 Statement and accompanying exhibits.  Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement of Facts, which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party.  D. Conn. L. Civ. R. 56(a)2(i).  Each admission or denial must include a citation to an affidavit or other admissible evidence.  D. Conn. L. R. 56(a)3.  In addition, the opposing party must set forth any additional facts that he or she contends establish genuine issues of material fact.  D. Conn. L. Civ. R. 56(a)2(ii).

Although the defendants informed Gulley of that requirement, Doc. No. 28-3, Gulley has not submitted a Local Rule 56(a)2 Statement with his opposition.  Instead, he included a signed statement at the beginning of his memorandum that notes that the document is sworn under penalty of perjury and "incorporates by reference his local rule 56(a)2 statement as if fully set forth herein."  Doc. No. 31, at 1.  Because courts afford special solicitude to *pro se* litigants, I will consider the facts included in the memorandum to be Gulley's Local Rule 56(a)2 Statement to the extent they include citations to and are supported by admissible evidence.  Because the complaint is verified, I will also consider the allegations that it sets forth.

In all other respects, the defendants' facts are deemed admitted.  *See* D. Conn. L. Civ. R. 56(a)1 ("Each material facts set forth in the Local Rule 56(a)(1) Statement and supported by the evidence will be deemed admitted unless controverted by the Local Rule 56(a)2 statement required to be filed and served by the opposing party in accordance with Rule 56(a)2.").

Gulley is hereby put on notice that, in future cases, he must comply with the instructions in the Notice to Pro Se Litigant and file a proper Local Rule 56(a)2 Statement in opposition to a motion for summary judgment.

during which correctional staff maintain control of the prisoner's arms and legs during the search. *Id.*, at ¶ 8. Limmer ordered the search to ensure the safety of both the DOC staff and Gulley in light of Gulley's "recent assaultive and self-injurious behavior" earlier that day. *Id.*, at ¶ 9.

Neither Limmer nor Sullivan was with Gulley at the hospital. *Id.*, at ¶ 10. Thus, neither knew whether Gulley had hidden weapons or contraband in or on his person. *Id.* Gulley became argumentative and objected to the controlled strip search. *Id.*, at ¶ 11. Limmer told Gulley that the search was necessary for his safety and the safety of staff. *Id.*, at ¶ 12.

Gulley continued to object to the controlled strip search, and refused to squat and cough when he was ordered to do so during the search. *Id.*, at ¶ 13; Doc. No. 31, at 3 ("the plaintiff verbally protested and complied with the controlled strip search up until 'the squat and cough.' The plaintiff ignored orders to squat and cough"). Prisoners are required to squat and cough to ensure that no contraband is hidden in the prisoner's anus. Doc. No. 28-2, at ¶ 13. After Gulley refused to squat and cough, Limmer again ordered him to do so. *Id.*, at ¶ 15. When Gulley continued to refuse the order, Limmer ordered Sullivan to apply "technique" to Gulley's right wrist. *Id.*, at ¶ 17. "Technique" is a wrist lock allowing pressure to be applied to an incarcerated person's wrist. *Id.*, at ¶ 18.

When Sullivan applied technique, Gulley stated, "They're going to have to break it, because I'm not going to squat and cough." *Id.*, at ¶ 19; Doc. No. 31 at 3. Following application of technique, Limmer again ordered Gulley to squat and cough. Doc. No. 28-2, at ¶ 21. Gulley still refused. *Id.*, at ¶ 22.

Limmer then ordered Sullivan to apply a "knee strike." *Id.*, at ¶ 23. A "knee strike"

involves striking the fatty portion of an individual's thigh with his knee. *Id.*, at ¶ 24. Gulley

states that the strike was applied to his upper right knee. *See* Doc. No. 31, at 3. After the first

knee strike, Gulley said "he just kicked me on camera." Doc. No. 28-2, at ¶¶ 25–26. Limmer

again ordered Gulley to squat and cough. *Id.*, at ¶ 28. Gulley refused. *Id.*, at ¶ 29. Limmer then

ordered Sullivan to apply a second knee strike, and Sullivan complied. *Id.*, at ¶ 30. Gulley,

however, continued to refuse all orders to squat and cough. *Id.*, at ¶¶ 31–32.

Afterward, Limmer ordered that Gulley be placed in full stationary restraints, or "four

point restraints," which fully restrain an individual's arms and legs. *Id.*, at ¶ 33. While staff was

preparing the restraints, Gulley agreed to squat and cough. *Id.*, at ¶ 34. After several inadequate

attempts, Gulley finally squatted low enough to complete the search procedure. *Id.*, at ¶ 35. No

further force was applied. *Id.*, at ¶ 37. When he was examined by medical staff, Gulley

complained of pain in his right leg from the knee strikes. *Id.*, at ¶ 39. Medical staff observed no

serious injuries. *Id.*, at ¶ 41.

III.     Discussion

The defendants move for summary judgment on Gulley's Eighth Amendment claim on

two grounds: they did not use excessive force and they are protected by qualified immunity. The

defendants also argue that they are entitled to summary judgment on the state law claims because

they are statutorily entitled to use reasonable physical force in the performance of their duties.

A.     Eighth Amendment

The use of excessive force against a prisoner can constitute cruel and unusual punishment

in violation of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 4 (1992); *accord*

*Wilkins v. Gaddy*, 559 U.S. 34, 34, 36–38 (2010) (per curiam). The "core judicial inquiry" is not

"whether a certain quantum of injury was sustained, but rather whether force was applied in a
good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."
*Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7).

To prevail on a claim for use of excessive force, Gulley must prove that, subjectively, the
defendants acted maliciously or sadistically to cause harm rather than in a good-faith effort to
maintain or restore discipline.  *See Hudson*, 503 U.S. at 7.  In evaluating a defendant's conduct,
courts consider various factors including: "the extent of the injury and the mental state of the
defendant, as well as 'the need for application of force; the correlation between that need and the
amount of force used; the threat reasonably perceived by the defendants; and any efforts made by
the defendants to temper the severity of a forceful response.'"  *Scott v. Coughlin*, 344 F.3d 282,
291 (2d Cir. 2003) (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)).

In addition, Gulley must prove, objectively, that the defendants' actions violated
"contemporary standards of decency."  *Blyden v. Mancusi*, 186 F.3d 252, 262–63 (2d Cir. 1999)
(internal quotation marks omitted) (citing *Hudson*, 503 U.S. at 8).  A *de minimis* use of physical
force will rarely be sufficient to satisfy the objective element unless that force is also "repugnant
to the conscience of mankind."  *Wilkins*, 559 U.S. at 37–38 (quoting *Hudson*, 503 U.S. at 9–10
(internal quotation marks omitted)).  In the end, it is the force used, not the injury sustained, that
"ultimately counts."  *Id.* at 38.  A malicious use of force to cause harm constitutes a per se Eighth
Amendment violation because, in that case, "contemporary standards of decency are always
violated."  *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9).

The defendants argue that Gulley fails to meet either component of the excessive force
standard.  *See* Mem. in Support of Mot. for Summ. J., Doc. No. 28-1, at 8–9.  In particular, they

6

contend that two knee strikes constitute a minimal use of force and that the use of that force was

justified in light of Gulley's continued refusal to comply with verbal commands or lesser forms

of force.  *Id*.  The defendants further note that neither Limmer nor Sullivan knew whether Gulley

had hidden a weapon or contraband, and that Limmer was aware that Gulley had attempted

suicide and had been issued a disciplinary report for attempting to assault a DOC employee

earlier that day.  Lastly, they assert that they had employed the less severe wrist technique before

using the knee strikes.

As support, they cite to *Bennett v. Britton*, 609 F. App'x 11 (2d Cir. 2015), in which the

Second Circuit held that a police officer's use of a peroneal nerve strike on an arrestee's thigh to

incapacitate him was objectively reasonable.  *Id.* at 13–14.  In *Bennett*, however, the arrestee was

exhibiting violent behavior; he was swinging his belt at several officers.  *Id.*  Here, both parties

concede, and the video recording confirms, that Gulley was not exhibiting violent behavior.

Although he refused to comply with Limmer's order, he was standing in the cell, surrounded by

three officers, with his hands cuffed behind his back.  Thus, *Bennett* does not compel a

conclusion that using knee strikes against Gulley was objectively reasonable.

Moreover, Gulley asserts that the knee strikes were painful and exacerbated the pain he

had experienced from his earlier suicide attempt.  Doc. No. 31, at 3–4.  He further asserts that his

knee was "swollen and bruised," and he "walked with a limp for a week."  *Id*. at 4.  Gulley also

avers that, in his period of incarceration, knee strikes have never been used on him to gain

compliance with a strip search.

Considering the above facts in the light most favorable to Gulley, I conclude that there is

a question for the jury on whether the objective prong was met.  It is undisputed that Sullivan

7

administered two knee strikes on Gulley, and the evidence demonstrates that those strikes

resulted in the swelling of Gulley's thigh.  A reasonable juror could therefore find that the force

used was more than a "push or shove that causes no discernable injury," and thus was more than

*de minimus.  Cf. Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (recognizing that a "'push or shove'

that causes no discernable injury" is most likely *de minimus*) (quoting *Hudson*, 503 U.S. at 9).

Regardless, Gulley has failed to sufficiently establish that his injuries were a product of

malicious or sadistic use of force rather than good-faith efforts to maintain discipline.  Although

the evidence indicates that Gulley sustained a discernable injury from the knee strikes, medical

staff observed "no serious injuries."  Ex. B to Doc. No. 28, at 4 ¶ 19.  Moreover, Gulley has

failed to put forth any evidence that refutes Limmer's sworn statement that he directed the strip

search once Gulley returned from the hospital because of Gulley's earlier attempts to assault an

officer and commit suicide.  Ex. B to Doc. No. 28, at 2 ¶ 8.

Gulley has also not pointed to any evidence disputing Sullivan's declaration that the

defendants forced Gulley to squat and cough so that they could conduct the search effectively.

Ex. A to Doc. No. 28, at 2 ¶ 12 ("Inmates are required to squat and cough during a strip search so

that DOC staff can ensure that an inmate is not hiding any weapons or contraband in his anus.").

Nor has Gulley cited to evidence challenging either defendant's statement that they did not know

whether Gulley had hidden anything on or in his person when he was at the hospital.  Ex. A to

Doc. No. 28, at 2 ¶ 11; Ex. B to Doc. No. 28, at 3 ¶ 10.

Further, the video reveals that correctional staff were calm and patient despite Gulley's

repeated refusals to comply with orders; nothing in their actions or demeanor suggests malice.  It

is undisputed that Gulley continued to refuse to squat and cough after he was verbally instructed

8

to do so and after a lesser form of force was applied.  *See Feliz-Ayala v. Semple*, 2012 WL

1946068, at \*4–5 (D. Conn. May 30, 2012) (noting that a prisoner's failure to comply with

verbal directions supported the conclusion that the defendants' use of force was reasonable).  For

those reasons, no reasonable juror could find that the knee strikes were employed maliciously or

sadistically, and, therefore, no triable issue exists with respect to the subjective element.

To the extent Gulley argues that Limmer or Sullivan's refusal to allow Gulley to strip

search himself was malicious because other officers allowed Gulley to do so when he entered the

RHU earlier that day, that argument is without merit.  The inquiry at hand is whether Limmer or

Sullivan had the requisite state of mind when they engaged in the controlled strip search.  *Griffin

v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) ("To meet the subjective requirement,

the inmate must show that the *prison officials involved* had a wanton state of mind when they

were engaging in the alleged misconduct.") (internal citations and quotation marks omitted)

(emphasis added).  Because Gulley does not allege that Limmer or Sullivan participated in the

earlier search, that search has no bearing on Limmer or Sullivan's state of mind when they

performed the search at issue hours later.

Moreover, the earlier search took place before Gulley had attempted to commit suicide

and was transported to the hospital; Limmer and Sullivan were therefore presented with

different, and perhaps more dangerous, circumstances when they performed the controlled

search.  Even if Limmer and Sullivan could have allowed Gulley to search himself, "[i]t is not

excessive force . . . for the defendants to choose between two lawful force options."  *Shehan v.

Erfe*, 2017 WL 53691, at \*9 (D. Conn. Jan. 4, 2017).

Lastly, to the extent Gulley rests his claim on the defendants' alleged failure to follow the

9

Department of Correction's administrative directives governing searches and the use of force,

that argument fails as well.  Gulley points to no evidence in support of that contention, and,

further, the Second Circuit in *Branham v. Meachum* concluded that prison officials' failure to

comply with an administrative directive does not, on its own, plausibly establish that they acted

with a wanton state of mind.  77 F.3d 626, 631 (2d Cir. 1996).

> B.      Qualified Immunity

Even if Gulley could set forth a valid Eighth Amendment claim, the defendants are

protected by qualified immunity.  Qualified immunity "protects government officials 'from

liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*,

555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In other

words, qualified immunity shields officials from monetary damages "unless a plaintiff pleads

facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right

was 'clearly established' at the time of the challenged conduct."  *See Ashcroft v. al-Kidd*, 563

U.S. 731, 735 (2011) (citation omitted).  Courts have the discretion to determine, in light of the

particular circumstances surrounding the case, "which of the two prongs of the qualified

immunity standard should be addressed first."  *See Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir.

2017) (internal citation omitted).

Qualified immunity "affords government officials 'breathing room' to make

reasonable—even if sometimes mistaken—decisions."  *Distiso v. Cook*, 691 F.3d 226, 240 (2d

Cir. 2012) (internal citation omitted).  "The qualified immunity standard is 'forgiving' and

'protects all but the plainly incompetent or those who knowingly violate the law.'"  *Grice v.*

*McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d

Cir. 2010)).

Recently, the Supreme Court addressed the issue of qualified immunity and stated that "it

is again necessary to reiterate the longstanding principle that 'clearly established law' should not

be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017).  The legal

principle at issue "must clearly prohibit the officer's conduct in the particular circumstances

before him." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018).

In determining whether a right is clearly established, I consider "the specificity with

which a right is defined, the existence of Supreme Court or Court of Appeals case law on the

subject, and the understanding of a reasonable officer in light of preexisting law." *Terebesi v.

Torreso*, 764 F.3d 217, 231 (2d Cir. 2014).  I specifically look at whether a holding prohibits the

conduct in question as well as whether decisions "clearly foreshadow a particular ruling on the

issue." *Id.* (internal citations omitted).  The absence of "cases of controlling authority" or "a

consensus of cases of persuasive authority" weighs in favor of a finding of qualified immunity.

*See Wilson v. Lane*, 526 U.S. 603, 617 (1999).

With respect to the issue at hand, there are no Supreme Court or Second Circuit cases

holding that knee strikes, in and of themselves, constitute excessive force.  Nor is there a

"consensus of cases" among other appellate courts holding that knee strikes—when administered

after a prisoner refuses to comply with verbal orders and after other, lesser techniques have been

attempted—rise to the level of excessive force under the Eighth Amendment.  I therefore

conclude that the defendants are protected by qualified immunity on the excessive force claim.

11

IV.     Conclusion

For the foregoing reasons, the defendants' motion for summary judgment **[Doc. No. 28]**

is **GRANTED** with respect to the federal claims.  I decline to exercise supplemental jurisdiction

over Gulley's supplemental state law claim.  *Lundy v. Catholic Health Sys. of Long Island Inc.*,

711 F.3d 106, 117–18 (2d Cir. 2013) ("Once all federal claims have been dismissed, the balance

of factors will 'usual[ly]' point toward a declination.") (internal citation omitted).  The Clerk is

thus directed to enter judgment in favor of the defendants on the Eighth Amendment claim,

dismiss without prejudice all state law claims, and close this case.

So ordered.

Dated at Bridgeport, Connecticut, this 20th day of April 2020.


/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge